At this time, we'll hear MALV Capital v. Marine Transport Logistics. Good morning. Good morning, Your Honor. May it please the Court, my name is Marcus Nussbaum, Counsel for Plaintiffs' Appellants. The Court may recall that this is an appeal taken from a final judgment entered by the United States District Court for the Eastern District of New York, wherein the Court denied Plaintiffs' Appellants' motion for relief pursuant to Federal Rule of Civil Procedure Rule 60. That motion sought relief from the Court's Order of September 2, 2015, which had granted the Defendant's motion for judgment on the pleadings and dismissed Plaintiffs' federal statutory claims. The Court's dismissal of Plaintiffs' cause of action under the Racketeer Influenced and Corrupt Organizations Act 18 U.S.C. 1961 et sec. is the main issue of this appeal. This Honorable Court may additionally recall that the District Court action arose out of a series of transactions perpetrated by Defendants' appellees against Plaintiffs' Appellants, who were defrauded when Defendants conspired by theft and conversion of property and assets to deprive— What is the new evidence that was not a matter of public record at the time of the trial or of the motion? Judge, I can answer that. And in my argument, we basically explained that the Court had actually misconstrued what that new evidence would be, and it was not the prior criminal history of Defendant Alexander Soloviev, which were included, actually, as additional new allegations in the proposed amended complaint. But what we are arguing is that the new evidence that formed the basis for the Rule 60 motion was this conflicting and duplicitous statement regarding a specific wire transfer in the sum of $49.50, where in the case below in the District Court, they had claimed that this was a wire transfer that contained payment to the Defendants for the purchase of a Porsche, which had been—I apologize—of a Mercedes, which had been confiscated from the Plaintiffs, which Defendants claimed to have subsequently sold to satisfy a maritime lien for debts allegedly due in owing on behalf of Plaintiffs. Once that representation had been made, if I remember correctly, on February 11th of 2016, the Defendants actually took a different story regarding that specific wire transfer, claiming before the Federal Maritime Commission in a completely unrelated action that that wire transfer had been for the purchase of a boat trailer, which in this case, MTL and others had allegedly sold to the complainants in that proceeding at the Federal Maritime Commission. In that proceeding, the Mercedes and the subject Porsche actually were not an issue. But once we became aware of that representation regarding the wire transfer $49.50, we explained in our brief that that duplicitous representation was the trigger that had brought us to the complainant in that proceeding, to wit, Middle East Asia Alpha and its owner, Alexander Safonov, and his other companies, whom I actually did not represent in the proceeding at the Federal Maritime Commission until the proceeding was actually dismissed. I was retained for the purposes of the appeal. But once we became aware of this duplicitous representation as a trigger, which I like to call it, at that time we learned that the Defendants had continued their fraudulent activity regarding the subject Mercedes and Porsche, this time representing to the complainants, Middle East Asia Alpha and its owner, that they had actually been owners of the Mercedes and Porsche. What about the email of February 23, 2015, which includes the invoice for the Mercedes? Doesn't that show that there was prior knowledge of that? Your Honor, the only thing that that invoice actually shows is Defendants' claim that they had sold the subject Mercedes to Middle East Asia Alpha FCE, which at that time to us had been a corporation located somewhere overseas, actually in Dubai, which we had no way of contacting. You didn't know what Middle East Asia was in 2015? We did not know who they were, except for them being listed on the invoice and Defendants having claimed to have sold the Mercedes to them. So again, Your Honor, at that point it led us to Middle East Asia Alpha, who at that time was already represented by counsel of the United States, and upon investigating the matter at that time, their counsel had actually assisted us with understanding that this fraudulent activity regarding the Mercedes and Porsche had continued, that the Defendants had produced these fake invoices purporting to indicate that the Defendants had purchased the subject Mercedes and Porsche from an auto auction warehouse known as Copart, and at that point had proposed a business venture wherein the Defendants would actually have the Mercedes and Porsche exported to Dubai to a warehouse under the control of Middle East Asia Alpha. In Safanoff's affidavit, though, he specifically indicates he's the owner of Middle East Asia Alpha. You were not aware of that before then? We were not. We were not, Judge. And what shows continuity beyond the two vehicles? What shows continuity, Your Honor, we rely upon Mr. Safanoff's explanation that the Defendants were actually engaging in an ongoing scheme where they were exporting stolen cars from the United States into Dubai where they could be sold with a clean title. That's specifically set forth in his affirmation, and I can also respectfully refer the Court to paragraph, if I remember correctly, it is paragraph 106 of the proposed amended complaint, but that specific language is actually cited in my brief where Mr. Dimitri Alper, who is the prior Director of Operations and General Counsel for MTL, explained in a deposition in a completely separate matter that's actually still ongoing right now in the United States District Court for the District of New Jersey that once the cars arrive in Dubai, they can be sold. Nobody in the United States, no one in Dubai or overseas really gives much weight to a title. It doesn't mean anything. And he actually explains that, and that specific language is also cited in my brief. When you say specific language, what are you referring to? I'm referring to Mr. Alper's deposition testimony, and I think I actually have it right here in front of me. It says what happened to the two cars. No, Your Honor, he's actually speaking at that point in general terms, and I do have the language in front of me, and this is actually what's included as an allegation in paragraph 106 of the proposed amended complaint. He explains that cars exported to Dubai for the United States can be sold by someone other than the owner or named title holder, and that in Dubai, nobody cares what the title says, and that titles are a U.S. document and they don't hold much weight around the world. They can be, but what shows that this scheme was going to do that? Again, Your Honor, we respectfully rely upon the certification of Alexander Safonov, who actually explained that this was a scheme that the defendants were engaging in. Thank you. You're welcome. Good morning, Your Honors. My name is Gary Pogiel. I represent the police in this case. I'd just like to point out that Mr. Safonov is the third-party plaintiff in the New Jersey District Court involving essentially the same property, and I had filed a motion for summary judgment in that case, and that matter is still pending. So now Mr. Safonov is hoping to become a plaintiff. If this case gets sent back, the proposed amended complaint, he's hoping to become a plaintiff in that proceeding. So I'm not sure how that's going to play out if this case gets sent back, if there's already a judicial, a pending judicial determination involving essentially the same property, definitely the same Mercedes. Additionally, I'd like to point out that the standard here is an abuse of discretion, and this court has pointed out that extraordinary circumstances have to be present to be relieved from judgment, and I don't believe that the judge in this case has abused her discretion, especially, as Your Honor, you pointed out, in light of the February 23rd of 2015 email that notified counsel of the existence of Mr. Safonov, Middle East Asia, which was more than six months before the order dismissing the recall claims was filed. How do we know that they knew about Safonov being involved with Middle East Asia, though, at that time? Your Honor, I believe it's their burden. Even if they didn't know, Rule 60B requires them to show due diligence in trying to ascertain any additional evidence, and there's no evidence in these proceedings that would show counsel's due diligence in trying to figure this out. That's my answer to this question. But they represented Safonov in the FMC proceeding, right? That's my understanding, Your Honor. But did that occur? Was that in place at the time of this email with the invoice? I believe Mr. Nussbaum did not represent them at the time of this email. But on the issue of open-ended continuity, there are no ongoing or existing negotiations or contracts between the parties, and no new property is involved. So there's no risk of ongoing criminal activity. So that's my argument on that question. So there's absolutely no contact between the parties, no business contacts, and the same property is involved that's pending in New Jersey. That's it. Thank you. Thank you both. We will reserve decision.